1   KENNETH E. KELLER (SBN 71450) kkeller@ksrh.com
2   ANNE E. KEARNS (SBN 183336) akearns@ksrh.com
    KELLER, SLOAN, ROMAN & HOLLAND LLP
3   555 Montgomery Street, 17th Floor
    San Francisco, California 94111
4   Telephone:    (415) 249-8330
    Facsimile:    (415) 249-8333
5
6   Attorneys for Plaintiff CHANEL, INC.

7

8                   THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  CHANEL, INC.,                          Case No. 13 2645

12              Plaintiff,                  MEMORANDUM OF POINTS AND
                                            AUTHORITIES IN SUPPORT OF
13  v.                                      PLAINTIFF'S *EX PARTE* APPLICATION
                                            FOR ENTRY OF TEMPORARY
14  THE PARTNERSHIPS OR                     RESTRAINING ORDER, PRELIMINARY
15  UNINCORPORATED ASSOCIATIONS            INJUNCTION, AND ORDER
    IDENTIFIED ON SCHEDULE "A" and          RESTRAINING TRANSFER OF ASSETS
16  DOES 1-100,                             TIED TO THE COUNTERFEITING
                                            OPERATION
17              Defendants.

18

19

20

21

22

23

24

25

26

27

28                                      1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION
FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER
RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION

# TABLE OF CONTENTS

I.    INTRODUCTION AND CLAIMS.........................................................................................1

II.   STATEMENT OF FACTS .................................................................................................2

      A.   Chanel's Rights.........................................................................................................2

      B.   Defendants Wrongfully Use the Chanel Trademarks. ...................................................4

III.  ARGUMENT....................................................................................................................8

      A.   A Temporary Restraining Order is Essential to Prevent Immediate Injury..................8

      B.   Standard for Temporary Restraining Order and Preliminary Injunction. .....................10

           1.    Probability of Success on the Merits of Chanel's Claims.................................11

                 a)   Plaintiff Will Likely Succeed on its Counterfeiting
                      and Infringement Claim. .........................................................................11

                      (1)   Strength of Plaintiff's Marks. ....................................................12

                      (2)   Proximity of the Goods. .............................................................13

                      (3)   Similarity of the Marks. .............................................................13

                      (4)   Evidence of Actual Confusion. ..................................................13

                      (5)   Marketing Channels Used...........................................................14

                      (6)   Type of Goods and Degree of Care Likely to
                            Be Exercised By Purchaser.........................................................14

                      (7)   Defendants' Intent in Selecting the Marks................................15

                      (8)   Likelihood of Expansion of the Product Lines. .........................16

                 b)   Plaintiff is Likely to Succeed on its False Designation
                      of Origin Claim.......................................................................................16

           2.    Chanel is Suffering Irreparable Injury. .............................................................17

           3.    The Balance of Hardship Tips Sharply in Chanel's Favor. ...............................17

           4.    The Relief Sought Serves the Public Interest. ..................................................17

      C.   The Equitable Relief Sought is Appropriate.................................................................18

i

1.   A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of the Chanel Marks is Appropriate.................18

2.   Entry of an Order Prohibiting Transfer of the Domain Names During the Pendency of this Action is Appropriate. ...........................................................19

3.   Entry of an Order Modifying Control, Redirecting, and Disabling the Subject Domain Names is Appropriate..........................................................................20

D.   An *Ex Parte* Order Restraining Transfer of Certain Assets Related to the Counterfeiting Business is Appropriate. ......................................................21

E.   A Bond Should Secure the Injunctive Relief. ...............................................24

IV.   CONCLUSION......................................................................................................24

1

## TABLE OF AUTHORITIES

2

**Cases**

3

Abercrombie & Fitch Co. v. Moose Creek, Inc.,
486 F.3d 629 (9th Cir. 2007)………………...................................................................................14, 15

4

5

Abercrombie & Fitch Trading Co. v. Wu, Case No. 2:11-cv-00042-MSD –TEM
(E.D. Va. Jan. 21, 2011)…...………………………………………………………………………23, 24

6

7

Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.,
944 F.2d 1446, 19 U.S.P.Q.2d 1491 (9th Cir. 1991)………...……………………………………...15, 16

8

ACI Int'l Inc. v. Adidas- Salomon AG,
59 F. Supp. 2d 918 (C.D. Cal. 2005)……………………………………………………………...17

9

10

AMF, Inc. v. Sleekcraft Boats,
599 F.2d 341 (9th Cir. 1979), 353 F.3d 792…………………………………………………...…12, 14, 15, 17

11

12

Board of Directors of Sapphire Bay Condominiums West v. Simpson,
77 U.S.P.Q.2d (BNA) 1629, 129 Fed. Appx. 711, * 8-9 (3rd Cir. 2005)……………………….……..23

13

14

Bottega Veneta International, S.A.R.L., v. Pan,
Case No. 10-62334-CIV (S.D. Fla. Dec. 9, 2010)..................................................................................24

15

Brookfield Communications, Inc. v. West Coast Entertainment Corp.,
174 F.3d 136 (9th Cir. 1999)……………………………………………………………………12, 13

16

17

California Independent System Operator Corp. v. Reliant Energy Services, Inc.,
181 F. Supp. 2d 1111 (E.D. Cal. 2001)………………………………………………………………11

18

Chanel, Inc. v. Dodd,
Case No. 09-3958-VRW (N.D. Cal. Sept. 4, 2009)………………………………………………….23

19

20

Chanel, Inc. v Does 1-172,
Case No. 2:10-cv-02684-BBD-dkv (W.D. Tenn. November 1, 2010)……………………………….24

21

Chanel, Inc. v. Paley,
Case No. 09-cv-04979-MHP (N.D. Cal. Oct. 26, 2009)……………………………………………….23

22

23

Chanel, Inc. v. Qi,
Case No. 3:11-cv-00362-CRB (N.D. Cal. Jan. 27, 2011)……………………….....................................23, 24

24

Chanel, Inc. v. The Unincorporated Partnerships and Associations,
Case No. 2:10-cv-02684-BBD-dkv (W.D. Tenn. Nov. 1, 2010)…………...……………….................21

25

26

Columbia Pictures Indus., Inc. v. Jasso,
927 F. Supp. 1075 (N.D. Ill. 1996)……………………………………………………………..11

27

28

iii

1  DaimlerChrysler v. The Net Inc.,
   388 F.3d 201 (6th Cir. 2004)..................................................................................18

2  E. & J. Gallo Winery v. Gallo Cattle Co.,
3  967 F.2d 1280 (9th Cir. 1992)...............................................................................16

4  Eclipse Assoc. v. Data General Corp.,
   894 F.2d 1114 (9th Cir. 1990)..........................................................................13, 14
5
   Fimab-Finanziaria Maglificio vs. Helio Import/Export, Inc.,
6  601 F. Supp. 1, 2 (S.D. Fla. 1983).........................................................................6

7  Florence Mfg. Co. v. J.C. Dowd & Co.,
8  178 F. 73 (2d Cir. 1910).......................................................................................15

9  Ford Motor Co. v. Greatdomains.Com, Inc.,
   177 F. Supp. 2d 635 (E.D. Mich. 2001).............................................................18, 19
10
   Ford Motor Company v. Lapertosa,
11 126 F. Supp. 2d 463 (E.D. Mich. 2001).................................................................21

12 Fruit of the Loom, Inc. v. Girouard,
13 994 F.2d 1359 (9th Cir. 1993)..........................................................................12, 13

14 GoTo.Com, Inc. v. Walt Disney Co.,
   202 F.3d 1199 (9th Cir. 2000)..........................................................................13, 14
15
   Gucci America, Inc. v. Ling,
16 Case No. 2:10-cv-00591-MSD-DEM (E.D. Va. Dec. 23, 2010)...............................24

17 Harrods Ltd. v. Sixty Internet Domain Names,
18 157 F. Supp. 2d 658 (E.D. Va.2001).......................................................................18

19 Iconix, Inc. v. Tokuda,
   457 F. Supp. 2d 969 (N.D. Cal. 2006).....................................................................22
20
   In re Vuitton et Fils, S.A.,
21 606 F.2d 1 (2d Cir. 1979)................................................................................9, 10

22 Interstellar Starship Serv. Ltd. v. Epix, Inc.,
23 184 F.3d 1107 (9th Cir. 1999)..........................................................................16, 18

24 Karl Storz Endoscopy- Am., Inc. v. Surgical Techs., Inc.,
   285 F.3d 848 (9th Cir. 2002).................................................................................15
25
   KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,
26 408 F.3d 596 (9th Cir. 2005)................................................................................12

27 Kraft Foods Holdings, Inc. v. Helm,
28 205 F. Supp. 2d 942 (N.D. Ill. 2002).....................................................................21

iv

*Louis Vuitton Malletier, S.A. v. 1854louisvuitton.com,*
Case 2:11-cv-00738-PMP–RJJ (D. Nev. June 20, 2012)..............................10, 11, 21, 22, 23, 24

*Louis Vuitton Malletier, S.A. v. Li,*
Case 11-cv-60611-WPD (S.D. Fla. March 28, 2011).......................................................23, 24

*Mattel, Inc. v. Walking Mountain Prods.,*
353 F.3d 792, 810, n. 19 (9th Cir. 2003).................................................................12

*Microsoft Corp. v. E & M Internet Bookstore, Inc.,*
2008 WL 191346 (N.D. Cal. 2008)........................................................................16

*Miss World (UK) Ltd. v. Miss Am. Pageants, Inc.,*
856 F.2d 1445 (9th Cir. 1988).............................................................................13

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.,*
638 F.3d 1137 (9th Cir. 2011)..............................................................................12

*New West Corp. v. NYM Co. of California, Inc.,*
595 F.2d 1194 (9th Cir. 1979).............................................................................17

*Nova Wines, Inc. v. Adler Fels Winery, LLC,*
467 F. Supp. 2d 965 (N.D. Cal. 2006)...............................................................15, 17

*Official Airline Guides, Inc. v. Goss,*
6 F.3d 1385 (9th Cir. 1993)..............................................................................16

*Quiroga v. Chen,*
735 F. Supp. 2d 1226 (D. Nev. 2010)....................................................................11

*Philip Morris USA, Inc. v. Otamedia Ltd.,*
331 F. Supp. 2d 228 (S.D.N.Y. 2004).....................................................................22

*Smith v. Chanel, Inc.,*
402 F.2d 562 (9th Cir. 1968)..............................................................................17

*Stork Rest. v. Sahati,*
166 F.2d 348 (9th Cir. 1948)...............................................................................15

*Stormans, Inc. v. Selecky,*
586 F.3d 1109 (9th Cir. 2009)............................................................................11

*Tiffany (NJ), LLC v. 925ly.com,*
Case No. 2:11-cv-00590-LDG-CWH (D. Nev. Sept. 27, 2011).....................10, 11, 21, 22, 23, 24

*Time Warner Enter. Co. v. Does #1-2,*
876 F. Supp. 407 (E.D.N.Y. 1994)........................................................................10, 11

*Toys "R" Us, Inc. v. Akkaoui,*
No. C 96-3381 CW, 1996 WL 772709, at *4 (N.D. Cal. Oct. 29, 1996)....................................22

v

Two Pesos, Inc. v. Taco Cabana, Inc.,
505 U.S. 763, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992)......................................................13

U.S. Olympic Committee v. Xclusive Leisure & Hospitality Ltd.,
2008 WL 3971120 (N.D. Cal. Aug. 25, 2008)...............................................................20

Verizon California Inc. v. OnlineNIC Inc.,
No. C 08-2832 JF (RS), 2008 WL 5352022, at *2 (N.D. Cal. Dec. 19, 2008)......................18

Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.,
161 F. Supp. 2d 1339 (S.D. Fla. 2001).........................................................................18

Winter v. Natural Res. Def. Council, Inc.,
555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008)...................................................................11

**Statutes**

15 U.S.C. §1114..........................................................................................11, 12

15 U.S.C. §1114(1)...........................................................................................12

15 U.S.C. §1114(2)(D).......................................................................................22

15 U.S.C. §1116(a)...........................................................................................21

15 U.S.C. §1125(a)...........................................................................................17

15 U.S.C. §1125(c)(1)..........................................................................................4

15 U.S.C. §1125(d).......................................................................................18, 19

15 U.S.C. §1125(d)(2)(C)....................................................................................22

15 U.S.C. §1127.................................................................................................6

**Rules**

Fed. R. Civ. P. 65(b)...........................................................................................9

Fed. R. Civ. P. 65(c)..........................................................................................24

**Journal Articles**

Viva R. Moffat, Regulating Search,
22 Harv. J.L. & Tech. 475, 481-82 (Spring, 2009).........................................................8

**Legislative Reports**

House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 13
(October 25, 1999)..........................................................................................................................20

vi

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff submits this Memorandum of Points and Authorities in support of its *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation (the "Application for TRO").

## I. INTRODUCTION AND CLAIMS

Plaintiff Chanel, Inc. ("Chanel"), a New York corporation, ("Plaintiff" or "Chanel") is suing Defendants, the Partnerships or Unincorporated Associations identified on Schedule "A" hereto and Does 1-100 (collectively "Defendants"), for federal trademark counterfeiting and infringement, false designation of origin, and common law unfair competition. As alleged in Chanel's Complaint, the Defendants are promoting, advertising, distributing, offering for sale and selling counterfeit and infringing products, including, at least, scarves, cases for telephones, protective covers for portable electronic devices, including cell phones, and costume jewelry, including necklaces and earrings (the "Defendants' Goods") bearing trademarks which are substantially indistinguishable from and/or colorful imitations of Chanel's registered trademarks, through the commercial e-stores identified on Schedule "A" hereto (collectively, the "Subject E-Store Names")[1] and the websites operating under the domain names identified on Schedule "B" hereto (collectively the, "Subject Domain Names").

The Defendants' unlawful activities have caused and will continue to cause irreparable injury to Chanel. Among other things, the Defendants have (1) deprived Chanel of its right to determine the manner in which its trademarks are presented to the public through merchandising; (2) defrauded the public into thinking the Defendants' Goods are valuable, authorized goods of Chanel; (3) deceived the public as to Chanel's sponsorship of and/or association with the Defendants' Goods and the e-stores through which such goods are marketed and sold; (4) wrongfully traded and capitalized on Chanel's reputation and goodwill and the commercial value of Chanel's trademarks; and (5) wrongfully damaged Chanel's ability to market its goods and educate consumers about its brand via the Internet in a free and fair marketplace.

[1] The Defendants in this matter operate exclusively from storenvy.com subdomains excepting Defendants 3 and 5 which also operate glambling.us and theprettylittlegeek.com, respectively.

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION

Moreover, Chanel recently obtained conclusive evidence that Defendants use money transfer services with PayPal, Inc. ("PayPal") as a method to receive monies generated through the sale of counterfeit products via all of the e-stores at issue. (Declaration of Eric Rosaler in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation ["Rosaler Decl."] ¶¶ 4-6, filed herewith.) Chanel seeks to restrain the illegal profits generated by Defendants. In light of the inherently deceptive nature of the counterfeiting business, Chanel has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. The Lanham Act allows Chanel to recover the illegal profits gained through Defendants' distribution and sales of counterfeit and infringing goods. See 15 U.S.C. § 1117(a). To preserve that disgorgement remedy, Chanel seeks an *ex parte* order restraining Defendants' funds transmitted through PayPal. The Defendants should not be permitted to continue their unlawful activities and should be enjoined.

## II. STATEMENT OF FACTS
### A. Chanel's Rights

Chanel is, and at all times relevant hereto has been, the owner of all rights in and to the following trademarks:

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|-----------|--------------------|-----------------|-----------------|
| CHANEL | 0,612,169 | September 13, 1955 | (Int'l Class: 14) Necklaces |
| CHANEL | 0,906,262 | January 19, 1971 | (Int'l Class: 25) Coats, suits, blouses, and scarves |
| CHANEL | 1,241,265 | June 7, 1983 | (Int'l Class: 25) Suits, jackets, skirts, dresses, pants, blouses, tunics, sweaters, cardigans, coats, raincoats, scarves, shoes and boots |

2

| | | | |
|---|---|---|---|
| ☪ | 1,501,898 | August 30, 1988 | (Int'l Class: 6) Keychains<br>(Int'l Class: 14) Costume jewelry<br>(Int'l Class: 16) Gift wrapping paper<br>(Int'l Class: 25) Blouses, shoes, belts, scarves, jackets, men's ties<br>(Int'l Class: 26) Brooches, buttons for clothing |
| CHANEL | 3,133,139 | August 22, 2006 | (Int'l Class: 14) Jewelry and watches |
| CHANEL | 3,890,159 | December 14, 2010 | (Int'l Class: 9) Cases for telephones<br>(Int'l Class: 16) Temporary tattoos<br>(Int'l Class: 18) Key cases |
| ☪ | 4,074,269 | December 20, 2011 | (Int'l Class: 9) Protective covers for portable electronic devices, handheld digital devices, personal computers and cell phones<br>(Int'l Class: 16) Temporary tattoos<br>(Int'l Class: 18) Key cases |

(the "Chanel Marks") which are registered on the Principal Register of the United States Patent and Trademark Office and are used in connection with the manufacture and distribution of high quality goods in the categories identified above. (Declaration of Adrienne Hahn Sisbarro in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation ["Hahn Decl."] ¶ 4, filed herewith; see also United States Trademark Registrations for the Chanel Marks at issue ["Chanel Trademark Registrations"] attached as Comp. Ex. A to the Hahn Decl.) The Chanel Marks are symbols of Chanel's quality, reputation, and goodwill and have never been abandoned. (Hahn Decl. ¶ 7.) Chanel has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its trademarks. (Hahn Decl. ¶¶ 6-7.) The Chanel Marks qualify as famous marks as the term is used in 15 U.S.C. § 1125(c)(1). (Hahn Decl. ¶¶ 6-7)

3

1        Furthermore, Chanel has extensively used, advertised, and promoted its Marks in the United
2  States in association with high quality scarves, cases for telephones, protective covers for portable
3  electronic devices, including cell phones, and costume jewelry, including necklaces and earrings,
4  and other goods, and has carefully monitored and policed the use of its Chanel Marks. (Hahn Decl. ¶
5  7.) As a result of Chanel's efforts, members of the consuming public readily identify products
6  bearing the Chanel Marks as being quality merchandise sponsored and approved by Chanel, and the
7  Marks have achieved secondary meaning as identifies of high quality products. (Hahn Decl. ¶ 7.)

8        At all times relevant hereto, the Defendants have been aware of Chanel's (a) ownership of
9  the Chanel Marks; (b) exclusive rights to use and license such Marks; and (c) substantial goodwill
10  embodied in, and favorable recognition for, the Chanel Marks for scarves, cases for telephones,
11  protective covers for portable electronic devices, including cell phones, and costume jewelry,
12  including necklaces and earrings.

13     **B.**    **Defendants Wrongfully Use the Chanel Trademarks.**

14        The Defendants do not have, nor have they ever had, the right or authority to use the Chanel
15  Marks for any purpose. (Hahn Decl. ¶ 9.) However, despite their known lack of authority to do so,
16  the Defendants have been advertising, offering for sale, and/or selling, at least, scarves, cases for
17  telephones, protective covers for portable electronic devices, including cell phones, and costume
18  jewelry, including necklaces and earrings, bearing counterfeit and infringing marks which are
19  substantially indistinguishable from and/or colorable imitations of the registered Chanel Marks.
20  (Hahn Decl. ¶¶ 9-16 a nd Comp. Ex. B attached thereto, relevant web page captures from the
21  Defendants' e-stores operating under the Subject E-Store Names displaying the Chanel branded
22  items offered for sale [the "Defendants' E-Stores"]; Declaration of Malerie Maggio in Support of
23  Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction,
24  and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation ["Maggio Decl."] ¶¶
25  4-10, filed herewith, and Comp. Exs. A-D attached thereto; Rosaler Decl. ¶¶ 4-6 and Comp. Exs. A-
26  B attached thereto; Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte*
27  Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order

28

4

1  Restraining Transfer of Assets Tied to the Counterfeiting Operation ["Gaffigan Decl."] ¶¶ 2-4, filed

2  herewith.) Moreover, given Defendants' slavish copying of the Chanel Marks, Defendants' Goods

3  sold under identical marks are indistinguishable to consumers, both at the point of sale and post-sale.

4          As part of its ongoing investigation regarding the sale of counterfeit and infringing products,

5  Chanel retained AED Investigations, Inc., a licensed private investigative firm and Investigative

6  Consultants, a licensed private investigative firm, to investigate the promotion and sale of counterfeit

7  versions of Chanel's products through the Subject E-Store Names. (Rosaler Decl. ¶ 3; Maggio Decl.

8  ¶ 3; Hahn Decl. ¶ 10; Gaffigan Decl. ¶ 4.) Eric Rosaler ("Rosaler"), an officer of AED

9  Investigations, Inc., accessed **storenvy.com/stores/26349-phone-candys** and placed an order for a

10 case for telephones – bearing counterfeits of, at least, one of the Chanel Marks at issue in this action,

11 and requested the product be shipped to his address. (Rosaler Decl. ¶¶ 4-5 and Comp. Ex. A attached

12 thereto.) Rosaler finalized payment for the Chanel-branded case for telephones purchased via

13 **storenvy.com/stores/26349-phone-candys**   via   PayPal   to   the   PayPal   account,

14 phonecandys@gmail.com (Id.) Subsequently, Rosaler received the Chanel branded case for

15 telephones he ordered via **storenvy.com/stores/26349-phone-candys** and forwarded the case for

16 telephones he purchased and received to Chanel for review and analysis, along with photographs of

17 the item and the Chain of Custody. (Rosaler Decl. ¶ 5 and Comp. Ex. A attached thereto; Hahn Decl.

18 ¶ 11.) Additionally, Rosaler accessed each of the e-stores identified in the table below, and went

19 through the purchasing process[2] for various products, most of which bore counterfeits of, at least,

20 one of the Chanel Marks at issue in this action.[3] (Id. at ¶ 6 and Comp. Ex. B attached thereto.)

21 Following submission of his orders, Rosaler received information for finalizing payment for each of

22 the items ordered via PayPal to Defendants' respective PayPal accounts, as follows:

23

24 [2] Rosaler intentionally did not finalize his purchases from the e-stores so as to avoid contributing funds to Defendants' coffers. (See Gaffigan Decl. ¶ 4.)

25 [3] Although all of the e-stores operating under the Subject E-Store Names offer for sale Chanel branded items (see Hahn Decl. ¶ 15 and Comp. Ex. B attached thereto), Rosaler intentionally

26 purchased non-Chanel-branded merchandise from some of the e-stores operating under the Subject E-Store Names as part of his investigative process. Making purchases of mixed brands is a technique

27 commonly used by investigators to avoid inadvertently alerting the target that a particular brand owner was conducting an investigation. (Rosaler Decl. ¶ 6, n. 1; Gaffigan Decl. ¶ 4.)

28                                                5

| Domain List | PayPal Account |
|---|---|
| storenvy.com/stores/27815-glam-bling | glamblingx3@gmail.com |
| glambling.us | glamblingx3@gmail.com |
| storenvy.com/stores/47549-rainbowsmile | katelow268@yahoo.com.sg |
| rainbowsmile.storenvy.com | katelow268@yahoo.com.sg |
| storenvy.com/stores/34659-glamor-me | glamor_me@live.com |
| glamorme.storenvy.com | glamor_me@live.com |
| storenvy.com/stores/23507-helloglitz | helloglitz@gmail.com |
| helloglitz.storenvy.com | helloglitz@gmail.com |

(Rosaler Decl. ¶ 6 and Comp. Ex. B attached thereto.)

Additionally, Malerie Maggio ("Maggio"), an employee of Investigative Consultants, accessed **storenvy.com/stores/34659-glamor-me**, **storenvy.com/stores/47510-lccboutique**, **storenvy.com/stores/26349-phone-candys**, and **storenvy.com/stores/46854-the-pretty-little-geek**, placed orders for the purchase of various products, including one protective cover for cell phones and three cases for telephones – all bearing counterfeits of, at least, one of the Chanel Marks at issue in this action, and requested the products be shipped to her address in San Francisco, California. (Maggio Decl. ¶¶ 4-10 and Comp. Exs. A-D attached thereto.) Maggio finalized payment for the Chanel-branded case for telephones purchased through **storenvy.com/stores/34659-glamor-me** via PayPal to the PayPal account, glamor_me@live.com, the Chanel-branded protective cover for cell phones purchased through **storenvy.com/stores/47510-lccboutique** via PayPal to the PayPal account, Lcelebrityclub@aol.com, the Chanel-branded case for telephones purchased through **storenvy.com/stores/26349-phone-candys** via PayPal to the PayPal account, phonecandys@gmail.com, and the Chanel-branded case for telephones purchased through **storenvy.com/stores/46854-the-pretty-little-geek** via PayPal to the PayPal account, theprettylittlegeek@gmail.com. (Id.) Subsequently, Maggio received the two Chanel-branded cases for telephones and the protective cover for cell phones she ordered via storenvy.com/stores/34659-glamor-me, storenvy.com/stores/46854-the-pretty-little-geek, and storenvy.com/stores/47510-

6

1  Iccboutique, respectively, and forwarded the items she purchased and received to Chanel for review
2  and analysis, along with photographs of the items and the relevant Chains of Custody. (Maggio Decl.
3  ¶¶ 5, 7, 10 and Comp. Exs. A-B, D attached thereto; Hahn Decl. ¶¶ 13-14.)

4  The detailed web page listings, images, and photographs of the Chanel-branded case for
5  telephones purchased and received by Rosaler via storenvy.com/stores/26349-phone-candys, as well
6  as the detailed web page listings, images, and photographs of the Chanel-branded and the as well as
7  the cases for telephones and the protective cover for cell phones purchased and received by Maggio
8  via storenvy.com/stores/34659-glamor-me, storenvy.com/stores/46854-the-pretty-little-geek, and
9  storenvy.com/stores/47510-Iccboutique, respectively, were reviewed by Chanel's representative,
10 Adrienne Hahn Sisbarro, who determined the products to be non-genuine, unauthorized Chanel
11 products.[4] (Hahn Decl. ¶¶ 11-14, 17.) Ms. Hahn Sisbarro also reviewed and visually inspected
12 Defendants' E-Stores, as well as pictures of items bearing the Chanel Marks offered for sale by
13 Defendants via their e-stores operating under the Subject E-Store Names, and likewise determined
14 the products were not genuine Chanel goods. (Hahn Decl. ¶¶ 15-17 and Comp. Ex. B attached
15 thereto, printouts of Defendants' E-Stores, showing Chanel branded goods offered for sale; see also
16 Comp. Ex. C attached thereto, summary comparison table illustrating examples of the Defendants'
17 infringement of the Chanel Marks.)

18 Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical
19 with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Also, using the
20 "ocular test" of direct comparison, courts have found that even marks which are slightly modified
21 from the registered marks copied are to be considered counterfeit marks. See Fimab-Finanziaria
22 Maglificio vs. Helio Import/Export, Inc., 601 F. Supp. 1, 2 (S.D. Fla. 1983). A comparison of the
23 Chanel Marks at issue to the marks used by the Defendants in connection with the promotion and

---

[4] To date, Maggio has not yet received the Chanel-branded telephone case she purchased via storenvy.com/stores/26349-phone-candys. (Maggio Decl. ¶ 8, n. 1.) However, the detailed web page captures of the Chanel-branded telephone case Maggio purchased via storenvy.com/stores/26349-phone-candys were sent to Chanel for review and analysis. (Maggio Decl. ¶ 8; Hahn Decl. ¶¶ 13-14.)

7

1     sale of the Defendants' Goods reveals the obvious counterfeit nature of the Defendants' Goods.
2     (Compare Chanel's Trademarks Registrations [Comp. Ex. A to the Hahn Decl.] with the Defendants'
3     E-Stores [Comp. Ex. B to the Hahn Decl.] and Comp. Exs. A-B to the Rosaler Decl. and Comp. Exs.
4     A-D to the Maggio Decl.) The Defendants' Goods bearing counterfeits and infringements of the
5     Chanel Marks are being promoted, advertised, offered for sale and sold by the Defendants to
6     consumers in this Judicial District and throughout the United States. (Rosaler Decl. ¶¶ 4-6 and
7     Comp. Exs. A-B attached thereto; Maggio Decl. ¶¶ 4-10 and Comp. Exs. A-D attached thereto;
8     Gaffigan Decl. ¶¶ 2-4; see also Hahn Decl. ¶¶ 11-15 and Comp. Ex. B attached thereto, the
9     Defendants' E-Stores.) The Defendants are making substantial sums of money by preying upon their
10    purchasers and members of the general public, many of whom have no knowledge the Defendants
11    are defrauding them through the sale of worthless counterfeit and infringing goods. The Defendants
12    are also falsely representing to consumers and the trade that their counterfeit and infringing goods
13    are genuine, authentic, endorsed, and authorized by Chanel. Ultimately, the Defendants' online e-
14    stores amount to nothing more than illegal operations infringing on the intellectual property rights of
15    Chanel and others. The Subject E-Store Names are used as the common names of the Defendants
16    and are themselves a substantial part of the means by which the Defendants further their scheme and
17    cause harm to Chanel.

18 **III.**    **ARGUMENT**

19     **A.**     **A Temporary Restraining Order is Essential to Prevent Immediate Injury.**

20     Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary
21    restraining order may be granted without written or oral notice to the opposing party or that party's
22    counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and
23    irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's
24    attorney can be heard in opposition." This is such a case. Moreover, temporary restraining orders are
25    available on an *ex parte* basis when notice is provided and there is a threat of intervening irreparable
26    harm before the preliminary injunction may be heard. FED.R.CIV.P. 65(b).

27     The Defendants herein fraudulently promote, advertise, offer to sell, and sell substantial

28

8

1 quantities of goods bearing counterfeits and infringements of the Chanel Marks via the e-stores
2 operating under, at least, the Subject E-Store Names. By their actions, the Defendants are creating a
3 false association in the minds of consumers between the Defendants and Chanel. Specifically, the
4 Defendants are wrongfully using counterfeits and infringements of the Chanel Marks to promote and
5 increase traffic to their illegal e-store businesses. Counterfeits and infringements of the Chanel
6 Marks are being used by the Defendants to increase traffic to their illegal businesses. The entry of a
7 temporary restraining order would serve to immediately stop the Defendants from benefiting from
8 their wrongful use of the Chanel Marks and would preserve the status quo until such time as a
9 hearing can be held. Thus, a temporary restraining order is appropriate. In re Vuitton et Fils, S.A.,
10 606 F.2d 1, 4 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to
11 the commencement of an action when they are the sole method of preserving a state of affairs in
12 which the court can provide effective final relief). Identical relief was recently granted in Louis
13 Vuitton Malletier, S.A. v. 1854louisvuitton.com, Case 2:11-cv-00738-PMP–RJJ (D. Nev. June 20,
14 2012) (Order granting *Ex Parte* Application for Temporary Restraining Order) and in Tiffany (NJ),
15 LLC v. 925ly.com, Case No. 2:11-cv-00590-LDG-CWH (D. Nev. Sept. 27, 2011) (same).

16 In the absence of a temporary restraining order without notice, the Defendants can and, based
17 upon Chanel's counsel's past experience, will significantly alter the status quo before the Court can
18 determine the parties' respective rights. Specifically, the domain names at issue in this action are
19 under the complete control of the Defendants. Thus, the Defendants have the ability to modify
20 registration data and content, change hosts and, most importantly, redirect traffic to other websites
21 they control. (Gaffigan Decl. ¶ 5.) Such modifications can happen in a short span of time after
22 Defendants are provided with notice of this action. (Id. at ¶ 6.) Chanel's counsel has learned
23 through multiple prior cases that, upon notice of a lawsuit, counterfeit website owners typically
24 immediately set up a redirect which essentially informs a search engine that the website being
25 crawled has permanently moved to another domain and instructs the search engine to divert traffic to
26 the other website. (Id. at ¶ 7.) In the circumstances present in this case, the Defendants could use the
27 redirect to push new traffic from the domain names they control at issue to new domains not yet

28

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION

1  identified in the Complaint. (See id.) The result would be to slingshot the new domains to the top of
2  the search engine results pages by leveraging the Internet traffic to the domains in suit which was
3  built through the illegal use of the Chanel Marks. (Id.) In short, the Defendants would completely
4  erase the status quo by transferring all of the benefits of their prior illegal activities to new websites.
5  (Id. at ¶ 8 and Comp. Ex. C attached thereto, examples of redirections.)

6        Moreover, federal courts have long recognized that civil actions against counterfeiters –
7  whose very businesses are built around the deliberate misappropriation of rights and property
8  belonging to others – present special challenges that justify proceeding on an *ex parte* basis. Time
9  Warner Enter. Co. v. Does #1-2, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994) (compiling cases and
10 noting, "[w]here plaintiffs have shown that a danger exists of destroying or transferring infringing
11 goods, courts in this Circuit have not hesitated to grant *ex parte* orders under either the Lanham Act
12 or the Copyright Act."); see also Louis Vuitton Malletier, S.A. v. 1854louisvuitton.com, Case 2:11-
13 cv-00738-PMP–RJJ (D. Nev. June 20, 2012) (Order granting *Ex Parte* Application for Temporary
14 Restraining Order); Tiffany (NJ), LLC v. 925ly.com, Case No. 2:11-cv-00590-LDG-CWH (D. Nev.
15 Sept. 27, 2011) (same); Columbia Pictures Indus., Inc. v. Jasso, 927 F. Supp. 1075, 1077 (N.D. Ill.
16 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise
17 are often useless if notice is given to the infringers"). This Court should prevent an injustice from
18 occurring by issuing an *ex parte* temporary restraining order which precludes the Defendants from
19 continuing to display their infringing content via the e-stores operating under the Subject E-Store
20 Names and which temporarily removes control over the domain names at issue in the matter from
21 Defendants. Only such an order will prevent ongoing irreparable harm and maintain the status quo.

22        **B.    Standard for Temporary Restraining Order and Preliminary Injunction.**

23        The standard for obtaining a temporary restraining order and the standard for obtaining a
24 preliminary injunction are the same. Quiroga v. Chen, 735 F. Supp. 2d 1226, 1228 (D. Nev. 2010)
25 (citing Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc., 181 F. Supp. 2d 1111, 1126
26 (E.D. Cal. 2001)). In order to obtain an injunction in the Ninth Circuit, Chanel must establish: (1) it
27 is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of

28

10

1   preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public
2   interest. Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Natural
3   Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008)). Chanel's evidence establishes
4   all of the relevant factors. Accordingly, injunctive relief is appropriate.

5       **1.    Probability of Success on the Merits of Chanel's Claims.**

6           **a)    Plaintiff Will Likely Succeed on its Counterfeiting and
7                   Infringement Claim.**

8       Title 15 U.S.C. §1114 provides liability for trademark infringement if, without the consent of
9   the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable
10  imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to
11  deceive." Chanel must demonstrate (1) ownership of the marks at issue; (2) the Defendants' use of
12  the marks is without authorization from Chanel; and (3) the Defendants' use is likely to cause
13  confusion, mistake, or deception as to the source, affiliation, or sponsorship of the Defendants'
14  Goods. See 15 U.S.C. § 1114(1). Chanel's evidence submitted herewith satisfies the three
15  requirements of 15 U.S.C. § 1114.

16      The first two elements of Chanel's trademark counterfeiting and infringement claims are
17  easily met. The Chanel Marks are owned by Chanel and are registered on the Principal Register of
18  the Untied Patent and Trademark Office. (See Chanel Trademark Registrations attached as Comp.
19  Ex. A to the Hahn Decl.) Moreover, the Defendants do not have, nor have they ever had, the right or
20  authority to use the Chanel Marks. (Hahn Decl. ¶ 9.)

21      The Ninth Circuit sets forth eight factors to be weighed in determining the third element,
22  likelihood of confusion. See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979),
23  abrogated in part on other grounds as stated in Mattel, Inc. v. Walking Mountain Prods., 353 F.3d
24  792, 810, n. 19 (9th Cir. 2003). The eight Sleekcraft factors are: (1) strength of the mark; (2)
25  proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing
26  channels used; (6) type of goods and degree of care likely to be exercised by a purchaser; (7)
27  defendants' intent in selecting the mark; and (8) likelihood of expansion of the product lines. (See

28                                              11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION
FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER
RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION

1  id.; see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 608 (9th Cir.

2  2005). The eight factors listed are to be weighed and balanced, and no particular factor is dispositive.

3  <center>**(1)    Strength of Plaintiff's Marks.**</center>

4  "The stronger a mark—meaning the more likely it is to be remembered and associated in the

5  public mind with the mark's owner—the greater the protection it is accorded by the trademark laws."

6  Network Automation, Inc. v. Advanced Systems Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011)

7  quoting Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1058 (9th Cir.

8  1999). Strength is measured both in terms of conceptual strength, the trademark's inherent

9  distinctiveness on the spectrum of protectability, and in terms of commercial strength, which is

10  based on actual marketplace recognition. See id. Although part of a mark may be weak, the mark as

11  a whole may be strong. See Fruit of the Loom, Inc. v. Girouard, 994 F.2d 1359, 1362 (9th Cir. 1993)

12  (noting that although the word "Fruit" was not in and of itself a strong mark, the phrase "Fruit of the

13  Loom" was). The spectrum of protectability and strength for trademarks is divided into four primary

14  types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4)

15  generic. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 112 S. Ct. 2753, 120 L.Ed.2d 615

16  (1992). Arbitrary or fanciful marks are the strongest. Moreover, arbitrary/fanciful and suggestive

17  marks are deemed inherently distinctive and entitled to protection. (See id.) It cannot be seriously

18  disputed that the Chanel Marks are strong, arbitrary and fanciful marks. (Hahn Decl. ¶¶ 4-7 and

19  Comp. Ex. A attached thereto, Chanel Trademark Registrations.)

20  In addition to their inherent strength, the Chanel Marks have also acquired secondary

21  meaning.[5] Chanel has expended substantial time, labor, skill, and expense in developing, advertising,

22  and promoting the Chanel Marks. (Hahn Decl. ¶¶ 6-7.) The Chanel Marks enjoy widespread

23  recognition and are each prominent in the minds of the consuming public. (Hahn Decl. ¶ 7.) Indeed,

24  Chanel products bearing the Chanel Marks are among the best selling luxury goods in the United

26  [5] All of the Chanel Registrations are incontestable and therefore conclusively presumed to have secondary meaning. Miss World (UK) Ltd. v. Miss Am. Pageants, Inc., 856 F.2d 1445, 1448, n. 4 (9th Cir. 1988) abrogated on other grounds as recognized in Eclipse Assoc. Ltd. v. Data Gen. Corp., 894 F.2d 1114, 1116, n. 1 (9th Cir. 1990).

<center>12</center>

States. (Hahn Decl. ¶ 6.)

## (2) Proximity of the Goods.

Although each of the Defendants is not selling all of the same types of products as the others, they are each promoting, offering for sale and/or selling at least some of the same type of goods Chanel sells, i.e., scarves, cases for telephones, protective covers for portable electronic devices, including cell phones, and costume jewelry, including necklaces and earrings. (Hahn Decl. ¶¶ 4-5, 9, 11-15 and Comp. Ex. B attached thereto, the Defendants' E-Stores.) The fact that the Defendants are selling the same type of goods as those sold by Chanel is one of the three most important factors to be considered in the likelihood of confusion analysis. See GoTo.Com, Inc. v. Walt Disney Co., 202 F.3d at 1055 ("related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods") (quoting Brookfield Commc'ns, Inc., 174 F.3d 136 (9th Cir. 1999)).

## (3) Similarity of the Marks.

The Ninth Circuit has also expressly stated that similarity of the marks is another of the three most probative factors in the likelihood of confusion analysis. GoTo.Com, Inc., 202 F.3d at 1205. In the instant case, the Defendants are using marks which are (visually and phonetically) substantially indistinguishable from and/or colorful imitations of the Chanel Marks. (Compare Chanel Trademark Registrations [Comp. Ex. A to the Hahn Decl.] with the Defendants' E-Stores [attached as Comp. Ex. B to the Hahn Decl.] and the detailed webpage listing and images of the Chanel branded products purchased by Investigator Rosaler [Comp. Ex. A to Rosaler Decl.] and Investigator Maggio [Comp. Exs. A-D to Maggio Decl.]; see also Comp. Ex. C to the Hahn Decl., summary comparison table illustrating examples of the Defendants' infringement of the Chanel Marks.)

## (4) Evidence of Actual Confusion.

Actual confusion is unnecessary to establish infringement since the test is likelihood of confusion. Eclipse Assoc., 894 F.2d at 1118. Indeed, the Court in Sleekcraft held "[b]ecause of the difficulty in garnering such evidence, the failure to prove instances of actual confusion is not dispositive." Sleekcraft, 599 F.2d at 352. In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available. The Defendants are advertising and offering to sell counterfeit and infringing goods which appear to be

13

1  substantially indistinguishable from and/or colorful imitations of those sold by Chanel. (See the
2  Defendants' E-Stores attached as Comp. Ex. B to the Hahn Decl. and the detailed web page listing
3  and images of the Chanel branded products purchased by Investigator Rosaler attached as Comp. Ex.
4  A to the Rosaler Decl. and by Investigator Maggio attached as Comp. Exs. A-D to the Maggio Decl.)
5  Even if buyers are told of the bogus nature of the Defendants' Goods, other consumers viewing the
6  Defendants' Goods in a post-sale setting will obviously be confused, because they are viewing goods
7  bearing the Chanel Marks which undeniably creates the impression they are viewing genuine goods
8  sold or authorized by Chanel. Post-sale consumer confusion is ensured by the Defendants' offering
9  for sale and sale of goods bearing marks which are substantially indistinguishable from and/or
10  colorful imitations of the Chanel Marks. Such post-sale confusion is entirely actionable.
11  Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 635 (9th Cir. 2007) (citing Karl Storz
12  Endoscopy- Am., Inc. v. Surgical Techs., Inc., 285 F.3d 848, 854 (9th Cir. 2002)); see also Acad. of
13  Motion Picture Arts & Scis. v. Creative House Promotions, Inc., 944 F.2d 1446, 1455, 19
14  U.S.P.Q.2d 1491 (9th Cir. 1991) (while purchaser of OSCAR look-alike award would know it is not
15  a genuine OSCAR, "a large secondary audience" of recipients and viewers "might conceivably
16  assume the [Defendant's] Award was somehow associated with the Oscar;" infringement found).

**(5)    Marketing Channels Used.**

Convergent marketing channels increase the likelihood of confusion. Sleekcraft, 599 F.2d at
353. Both Chanel and the Defendants sell, distribute, and advertise their products using at least one
of the same marketing channels, the Internet, in the same geographical distribution areas, including
the United States, including the Northern District of California. (Rosaler Decl. ¶¶ 4-5 and Comp. Ex.
A thereto; Maggio Decl. ¶¶ 4-10 and Comp. Exs. A-D thereto; and the Defendants' E-Stores
attached as Comp. Ex. B to the Hahn Decl.) Thus the conditions of purchase for both parties are
unmistakably identical. Moreover, both target the same general customers, and as such, Chanel is
directly competing with the Defendants' Goods.

**(6)    Type of Goods and Degree of Care Likely to Be Exercised
By Purchaser.**

The standard used by courts in assessing the likelihood of confusion of the public is not of an

14

1  expert, but rather the "typical buyer exercising ordinary caution." Sleekcraft, 599 F.2d at 353. When
2  reviewing this factor, the most important consideration is generally price. Consumer confusion is
3  likely to occur from paying similar prices for counterfeit and infringing goods, because consumers
4  may reasonably suspect that those goods have a common origin or that they are someway related to
5  the genuine goods. Although consumers are generally expected to be more careful when selecting
6  goods at high prices, see e.g., Nova Wines, Inc. v. Adler Fels Winery, LLC, 467 F. Supp. 2d 965,
7  981 (N.D. Cal. 2006), the law is nevertheless designed to protect the purchasing public, including
8  "the ignorant, the inexperienced, and the gullible." Stork Rest. v. Sahati, 166 F.2d 348, 359 (9th Cir.
9  1948); Florence Mfg. Co. v. J.C. Dowd & Co., 178 F. 73, 75 (2d Cir. 1910) (stating that the law
10  protects "the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to
11  analyze, but are governed by appearance and general impressions.").

12     Despite the fact that the Defendants' counterfeit and infringing goods are priced lower than
13  genuine Chanel goods, even a detailed analysis of the Defendants' finished counterfeit and
14  infringing products by a consumer in a post-sale setting may not reveal they are discernable from
15  Chanel's genuine goods, since the counterfeit and infringing marks being used by the Defendants are
16  substantially indistinguishable from and/or colorful imitations of the Chanel Marks. (Compare
17  Chanel Trademark Registrations [Comp. Ex. A to the Hahn Decl.] with the Defendants' E-Stores
18  [attached as Comp. Ex. B to the Hahn Decl.] and the detailed web page listing and images of the
19  Chanel branded goods purchased by Investigator Rosaler [Comp. Ex. A to the Rosaler Decl.] and by
20  Investigator Maggio [Comp. Exs. A-D to Maggio Decl.].)

21          **(7)     Defendants' Intent in Selecting the Marks.**

22     The Ninth Circuit has held that "[w]hen an alleged infringer knowingly adopts a Mark
23  similar to another's, courts will presume an intent to deceive the public." Official Airline Guides,
24  Inc. v. Goss, 6 F.3d 1385, 1394 (9th Cir. 1993); see also E. & J. Gallo Winery v. Gallo Cattle Co.,
25  967 F.2d 1280, 1293 (9th Cir. 1992). In a case of clear-cut copying such as this, it is appropriate to
26  infer the Defendants intended to benefit from Chanel's reputation, to the detriment of Chanel. See
27  Interstellar Starship Serv. Ltd. v. Epix, Inc., 184 F.3d 1107, 1111 (9th Cir. 1999), cert. denied, 528

28

15

1   U.S. 1155, 120 S. Ct. 1161, 145 L. Ed.2d 1073 (2000) ("Adopting a designation with knowledge of

2   its trademark status permits a presumption of intent to deceive. [...] In turn, intent to deceive is

3   strong evidence of a likelihood of confusion."); see also Acad. of Motion Picture Arts & Scis., 944

4   F.2d at 1456. The Defendants obviously adopted the Chanel Marks with the intention of reaping the

5   benefits of Chanel's world-famous reputation and for the purpose of defrauding the public. At a bare

6   minimum, the Defendants acted with willful blindness or with reckless disregard for Chanel's

7   trademark rights. See Microsoft Corp. v. E & M Internet Bookstore, Inc., C 06-06707 WHA, 2008

8   WL 191346, at *3 (N.D. Cal. Jan. 22, 2008) (trademark infringement can be deemed willful where

9   defendants acted with "willful blindness.") The Defendants cannot seriously contend they did not

10  intend to reap the benefits of Chanel's world-famous reputation for the purpose of defrauding the

11  public.

12                      **(8)    Likelihood of Expansion of the Product Lines.**

13          Chanel already distributes goods, specifically, scarves, cases for telephones, protective

14  covers for portable electronic devices, including cell phones, and costume jewelry, including

15  necklaces and earrings, which are virtually identical, except in quality, to those being sold and

16  offered for sale by the Defendants. (See Chanel Trademark Registrations [Comp. Ex. A to the Hahn

17  Decl.] with the Defendants' E-Stores [attached as Comp. Ex. B to the Hahn Decl.] and the detailed

18  web page listing and images of the Chanel branded goods purchased by Investigator Rosaler [Comp.

19  Ex. A to Rosaler Decl.] and by Investigator Maggio [Comp. Exs. A-D to Maggio Decl.].) Since the

20  Defendants are already directly competing with Chanel by promoting and selling the aforementioned

21  counterfeit and infringing goods, analysis of this factor is unnecessary. See Nova Wines, 467 F.

22  Supp. 2d at 982.

23          It is abundantly clear the eight Sleekcraft factors weigh overwhelmingly in Chanel's favor.

24  Chanel has, therefore, shown a probability of success on the merits of its trademark counterfeiting

25  and infringement claim.

26                      **b)      Plaintiff is Likely to Succeed on its False Designation of Origin
                                 Claim.**

27          As with trademark infringement claims, the test for liability for false designation of origin

28                                                      16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION
FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER
RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION

1    under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to

2    be deceived or confused by the similarity of the marks at issue. Smith v. Chanel, Inc., 402 F.2d 562,

3    565 (9th Cir. 1968). As noted by the Ninth Circuit, "[w]hether we call the violation infringement,

4    unfair competition or false designation of origin, the test is identical "is there a 'likelihood of

5    confusion?'" New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1201 (9th Cir. 1979);

6    see also ACI Int'l Inc. v. Adidas- Salomon AG, 359 F. Supp. 2d 918, 921 (C.D. Cal. 2005) ("The

7    ultimate test for unfair competition is exactly the same as for federal trademark infringement.").

8    Therefore, because Chanel has established the merits of its trademark counterfeiting and

9    infringement claims against the Defendants, a likelihood of success is also shown as to Chanel's

10    federal false designation of origin pursuant to Section 43(a) of the Lanham Act.

11             **2.**     **Chanel is Suffering Irreparable Injury.**

12          As demonstrated above, a likelihood of consumer confusion exists herein, because the

13    Defendants are engaged in continuous counterfeiting and infringing activities using spurious

14    designations, which are substantially indistinguishable from and/or colorful imitations of the Chanel

15    Marks. Thus, Chanel continues to suffer irreparable injury to its reputation and goodwill for as long

16    as the Defendants are allowed to continue their counterfeiting, infringing, and false association

17    activities. (Hahn Decl. ¶ 19.)

18             **3.**     **The Balance of Hardship Tips Sharply in Chanel's Favor.**

19          Chanel has expended substantial time, money and other resources to develop the quality,

20    reputation and goodwill associated with the Chanel Marks and the genuine goods sold under such

21    Marks. (Hahn Decl. ¶¶ 6-7.) Should the Defendants be permitted to continue their trade in

22    counterfeit and infringing goods using the Chanel Marks, Chanel will suffer substantial losses and

23    damage to its reputation. To the contrary, the Defendants will suffer no legitimate hardship in the

24    event a temporary restraining order and a preliminary injunction are issued, because the Defendants

25    have neither the legal or equitable right to engage in their present counterfeiting activities.

26             **4.**     **The Relief Sought Serves the Public Interest.**

27          The Defendants are engaging in wrongful activities and are directly defrauding the

28

<div align="center">17</div>

1 consuming public by palming off the Defendants' Goods as genuine goods of Chanel. Moreover, the
2 Defendants are falsely identifying Chanel as the origin of such goods. The public has an interest in
3 not being misled as to the origin, source or sponsorship of trademarked products. See e.g., U.S.
4 Olympic Committee v. Xclusive Leisure & Hospitality Ltd., No. C 08-03514 JSW, 2008 WL
5 3971120, at *10 (N.D. Cal. Aug. 25, 2008).

6          **C.    The Equitable Relief Sought is Appropriate.**

7          The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity
8 and upon such terms as the court may deem reasonable, to prevent the violation of any right of the
9 registrant of a mark ..." 15 U.S.C. § 1116(a).

10          **1.    A Temporary Restraining Order Immediately Enjoining Defendants'**
11          **Unauthorized and Illegal Use of the Chanel Marks is Appropriate.**

12         Chanel requests an order requiring the Defendants immediately cease all use of the Chanel
13 Marks, or substantially similar marks, including on or in connection with all fully interactive,
14 commercial e-stores owned and operated, or controlled by them. Such relief is necessary to stop the
15 ongoing harm to Chanel's marks and goodwill and to prevent the Defendants from continuing to
16 benefit from the increased traffic to their illegal e-store operations created by their unlawful use of
17 the Chanel Marks. This Court and others have authorized immediate injunctive relief in cases
18 involving the unauthorized use of trademarks. Virtually identical relief as requested herein was
19 recently entered by Courts in this Circuit and others in Louis Vuitton Malletier, S.A. v.
20 1854louisvuitton.com, Case 2:11-cv-00738-PMP–RJJ (D. Nev. June 20, 2012) (Order granting *Ex*
21 *Parte* Application for Temporary Restraining Order) and in Tiffany (NJ), LLC v. 925ly.com, Case
22 No. 2:11-cv-00590-LDG-CWH (DE 12) (D. Nev. Sept. 27, 2011) (same); see also Chanel, Inc. v.
23 The Unincorporated Partnerships and Associations, et al., Case No. 2:10-cv-02684-BBD-dkv (W.D.
24 Tenn. Nov. 1, 2010) (same); Kraft Foods Holdings, Inc. v. Helm, 205 F. Supp. 2d 942, 956 (N.D. Ill.
25 2002) (granting preliminary injunction requiring defendant "immediately" to remove all references
26 to version of plaintiffs mark, including removing all references "from any metatags, metanames, or
27 any other keywords on his websites); Ford Motor Co. v. Lapertosa, 126 F. Supp. 2d 463, 467-68

28                                               18

(E.D. Mich. 2001) (defendant enjoined from "using in any way the Internet domain name "fordrecalls.com").

## 2. Entry of an Order Prohibiting Transfer of the Domain Names During the Pendency of this Action is Appropriate.

To preserve the status quo, Chanel seeks an order temporarily modifying control of and prohibiting the Defendants from transferring the domain names at issue in the matter to other parties. Under the operating rules of domain name registrars, defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name and thereby frustrate the court's ability to provide relief to the plaintiff. (Gaffigan Decl. ¶ 5.) Moreover, defendants can and often do modify website content to thwart discovery and redirect traffic to thwart effective injunctive relief. (Id. at ¶ 6, and Comp. Ex. B attached thereto, examples of aforementioned redirection.) Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant such relief. See e.g., Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969, 1004 (N.D. Cal. 2006) (prohibiting defendants "from using, selling, licensing, or transferring the domain name"); Louis Vuitton Malletier, S.A. v. 1854louisvuitton.com, Case 2:11-cv-00738-PMP–RJJ (D. Nev. May 13, 2011) (prohibiting the defendant from transferring domain names during pendency or until further Order of the Court); Tiffany (NJ), LLC v. 925ly.com, Case No. 2:11-cv-00590-LDG-CWH (D. Nev. May 11, 2011) (same). Here, an interim order prohibiting the Defendants from transferring the domain names at issue poses no burden on them, preserves the status quo, and ensures that this Court will be able to afford Chanel full relief.

Because the domain name registrars exercise effective control over whether or not domain names can be transferred, the Lanham Act explicitly provides for registrars to deposit domain name certificates with the court, thereby recognizing the court's control over use of the domain names. See 15 U.S.C. § 1114(2)(D); 15 U.S.C. § 1125(d)(2)(C); Philip Morris USA, Inc. v. Otamedia Ltd., 331 F. Supp. 2d 228, 230 (S.D.N.Y. 2004) (affirming registrar's decision to deposit certificate with court where registrant used web site to make infringing sales); see also Toys "R" Us, Inc. v. Akkaoui, No. C 96-3381 CW, 1996 WL 772709, at *4 (N.D. Cal. Oct. 29, 1996) (noting that registrar, by

19

1  delivering certificate to the Court, had "delegated complete control regarding the disposition of the

2  registration and use of the domain name"). By this mechanism, the parties, and this Court, are

3  assured that the ownership of the domain names will not change while the action is proceeding.

4  Accordingly, Chanel seeks an order requiring the registrars for the domain names being used and

5  controlled by Defendants 3 and 5 (collectively the "Subject Domain Names") to deposit domain

6  certificates with the Court.

### 3.    Entry of an Order Modifying Control, Redirecting, and Disabling the Subject Domain Names is Appropriate.

In domain name trademark cases, this court and many other have recognized that an interim order redirecting, transferring, disabling, or canceling the offending domain names often may be the only means of affording plaintiff interim relief that avoids irreparable harm. See e.g., Board of Directors of Sapphire Bay Condominiums West v. Simpson, 77 U.S.P.Q.2d (BNA) 1629, 129 Fed. Appx. 711, * 8-9 (3rd Cir. 2005); see also Chanel, Inc. v Rene Paley, Case No. 09-cv-04979-MHP (N.D. Cal. Oct. 26, 2009) (Granting identical relief sought herein); Chanel, Inc. v Wuhan Dodd, Case No. 09-3958-VRW (N.D. Cal. Sept. 4, 2009) (same); Louis Vuitton Malletier, S.A. v. 1854louisvuitton.com, Case 2:11-cv-00738-PMP–RJJ (D. Nev. June 20, 2012) (temporary restraining order issued ordering that the top-level domain (TLD) Registry for the domain change the registrar of record to a holding account with the United States based Registrar GoDaddy.com, Inc.; also ordering that the Registrar set the domains to redirect to plaintiff's publication website and thereafter placing domain on lock status, preventing the modification or deletion of the domain by the registrar or the defendant); Tiffany (NJ), LLC v. 925ly.com, Case No. 2:11-cv-00590-LDG-CWH (D. Nev. Sept. 27, 2011) (same).[6]

---

[6] See also Chanel, Inc. v. Yang, Case No. 4:12-cv-04428-PJH (N.D. Cal. Sept. 10, 2012) (temporary restraining order entered ordering that the top-level domain (TLD) Registries for the domains change the registrar of record to a holding account with the United States based Registrar GoDaddy.com, Inc.; also ordering that the Registrar set the domains to redirect to plaintiff's publication website and thereafter placing domains on lock status, preventing the modification or deletion of the domains by the registrars or the defendant); S.A.S. Jean Cassegrain v. Wu, Case No. 1:13-cv-21097-KMW (S.D. Fla. April 8, 2013) (same); Abercrombie & Fitch Trading Co. v. 007fashion.com, Case No. 0:13-cv-60272-JIC (S.D. Fla. Feb. 7, 2013) (same).

20

1    Accordingly, in order to disable and/or redirect the Subject Domain Names, Chanel requests

2  the Court enter an order requiring the Registrars and the Registries which maintain the Top Level

3  Domain ("TLD") Zone files for the Subject Domain Names change the registrar of record for the

4  Subject Domain Names to a holding account with a Registrar of Chanel's choosing, where they will

5  be held in trust for the Court during the pendency of this action and set to automatically redirect to

6  http://www.servingnotice.com/omgenvy/index.html.[7] Upon such redirection, a copy of all of the

7  pleadings, other documents and Court orders issued in this matter will be immediately visible to the

8  Defendants the moment they type any of their own domain names into their web browser. The

9  Subject Domain Names would remain in the legal ownership of the Defendants, but they would no

10 longer be able to display the infringing and counterfeit website content at issue in this matter. Rather,

11 they would serve as the single most effective means of notifying the Defendants of the pendency of

12 this action and the relief sought by Chanel and affording them and any other interested parties with

13 an opportunity to present objections.

14    Additionally, Chanel requests the Court enter an order that, upon Chanel's request, any

15 Internet search engines, Web hosts, domain-name registrars and domain-name registries or

16 administrators which are provided with notice of the injunction, cease facilitating access to any or all

17 websites through which the Subject Domain Names and E-Stores engage in the promotion, offering

18 for sale and/or sale of goods bearing counterfeits and/or infringements of the Chanel Marks.

19   **D.   An *Ex Parte* Order Restraining Transfer of Certain Assets Related to the Counterfeiting Business is Appropriate.**

20

21    In addition to an order temporarily restraining Defendants' practices, the Court should enter

an order limiting the transfer of Defendants' unlawfully gained assets. Chanel has demonstrated that

22 it will likely succeed on the merits. As such, under 15 U.S.C. § 1117, Chanel will be entitled to an

23

24 ___

[7] Such relief regarding a change of registrars was most recently granted in Louis Vuitton Malletier, S.A. v. 1854louisvuitton.com, Case 2:11-cv-00738-PMP–RJJ (D. Nev. June 20, 2012) and Tiffany
25 (NJ), LLC v. 925ly.com, Case No. 2:11-cv-00590-LDG-CWH (D. Nev. Sept. 27, 2011); see also Bottega Veneta International, S.A.R.L., v. Pan, Case No. 10-62334-CIV, (S.D. Fla. Dec. 9, 2010);
26 Louis Vuitton Malletier, S.A. v. Li, Case 0:11-cv-60611-WPD (S.D. Fla. March 28, 2011); Chanel, Inc. v. Qi, Case No. 3:11-cv-00362-CRB (N.D. Cal. Jan. 27, 2011); Abercrombie & Fitch Trading
27 Co v. Wu, Case 11-cv-00042-MSD–TEM (E.D. Va. Jan. 21, 2011) (same); Gucci America, Inc. v. Ling, Case 2:10-cv-00591-MSD-DEM (E.D. Va. Dec. 23, 2010) (same).

28                                                   21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION

1
2
3
4
5

accounting and payment of the profits earned by Defendants throughout the course of their counterfeiting scheme. Due to the deceptive nature of the counterfeiting business, and Defendants' deliberate violation of the federal trademark laws, Chanel respectfully requests this Court grant additional *ex parte* relief restraining the transfer of all monies held or received by PayPal for the benefit of any one or more of the Defendants. See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc., 80 F.3d 749 (2d Cir. 1996).

6
7
8
9
10
11
12
13

        This Court has broad authority to grant such an order. The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in cases where an equitable interest is claimed. Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 144 L. Ed. 2d 319, 119 S. Ct. 1961 (1999). Moreover, almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to courts to freeze assets *pendente lite.* See Mason Tenders Dist. Council Pension Fund v. Messera, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all the Circuit Courts have held that Rule 65 is available to freeze assets pendente lite under some set of circumstances").

14
15
16
17
18
19
20
21
22
23
24
25
26
27

        In light of the illicit nature of the counterfeiting business, along with the ability of counterfeiters to practically eliminate their evidentiary trails by conducting their business entirely over the Internet, courts in the Ninth Circuit, among others, have particularly noted the significance of such asset freezes in cases involving counterfeiting defendants. See e.g. Reebok Int'l Ltd. v. Marnatech Enter., 737 F.Supp. 1515 (S.D. Cal. 1989), aff'd, 970 F.2d 552 (9th Cir. 1992); Levi Strauss & Co. v. Sunrise Int'l Trading, 51 F.3d 982 (11th Cir. 1995). In Reebok v. Marnatech, the District Court granted Reebok a limited restraint of the defendants' assets for the purpose of preserving those assets, thus ensuring the availability of a meaningful accounting after trial. Reebok Int'l Ltd., 737 F.Supp. at 559. In affirming the decision, the Ninth Circuit determined that the plaintiff met its burden of demonstrating: (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) that defendants might hide their allegedly ill-gotten profits if their assets were not frozen. Reebok Int'l Ltd., 970 F.2d 552, 563 (9th Cir. 1992). Moreover the Court reasoned: "because the Lanham Act authorizes the District Court to grant Reebok an accounting of [Defendant's] profits as a form of final equitable relief, the District Court has the inherent power to freeze [Defendant's] assets in order to ensure the availability of that final relief." Reebok Int'l Ltd., 970 F.2d. at 559; see also, Republic of Philippines v. Marcos, 862 F.2d 1355, 1364 (9th Cir. 1988), cert. denied, 490 U.S. 1035 (1989) ("[a] court has

28

22

the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies").

Similarly, in Levi Strauss, the Eleventh Circuit upheld an order granting an asset freeze against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under 15 U.S.C. § 1117. Levi Strauss, 51 F.3d at 987. Distinguishing Levi Strauss from two earlier cases not involving Lanham Act claims, the Court emphasized the necessity of the freeze holding that a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." Id. citing Federal Trade Commission v. United States Oil and Gas Corp., 748 F.2d 1431, 1433-34 (11th Cir.1984) (district court may exercise its full range of equitable powers, including a preliminary asset freeze, to ensure that permanent equitable relief will be possible). Indeed, in recent highly similar actions, several Courts have entered the precise relief sought herein.[8]

Using the power to issue provisional remedies ancillary to their authority to provide final equitable relief, numerous courts have granted orders restraining defendants from transferring their assets under trademark infringement claims. See e.g. Reebok Int'l Ltd., 970 F.2d at 559; Levi Strauss, 51 F.3d at 987. Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance notice of an asset freeze is likely to cause a party to alienate the assets sought to be frozen, a temporary restraining order may be issued *ex parte*. See F.T. Int'l Ltd v. Mason, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO freezing defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); CSC Holdings, Inc. v. Greenleaf Elec., Inc., 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and freezing pirates' assets).

In this case, Defendants' blatant violations of federal trademark laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets. Moreover, as Defendants' business is conducted almost entirely over the Internet, Chanel has additional cause for *ex parte* relief, as

---

[8] See e.g., Chanel, Inc. v. 7perfecthandbags.com, Case 12-cv-22057-PAS (S.D. Fla. April 23, 2013) (Order granting Seventh TRO restraining funds held or received by the PayPal accounts tied to counterfeiting operation); Tiffany (NJ) LLC v. 925jewelrymax.com, Case 12-cv-23518-PAS (S.D. Fla. Oct. 2, 2012) (Order granting TRO restraining funds held or received by the PayPal accounts tied to counterfeiting operation); see also ¶ 9 to the Gaffigan Decl. and Comp. Ex. C thereto, copies of all unpublished decisions.

23

Defendants may easily secret or transfer their assets without the Court or Chanel's knowledge

### E. A Bond Should Secure the Injunctive Relief.

Because of the strong and unequivocal nature of Chanel's evidence, Chanel respectfully requests this Court require Chanel to post a bond of no more than ten thousand dollars ($10,000.00). District Courts must set bond requirements when issuing restraining orders or preliminary injunction; however, District Courts have discretion to set the bond amount "in such sum as the court deems proper." See FED.R.CIV.P. 65(c) stating the amount of posting of security upon issuance of a temporary restraining order or permanent injunction is vested in the Court's sound discretion. The requested bond amount in this matter was recently approved as sufficient in a case seeking identical relief on behalf of Tiffany (NJ), LLC, Tiffany (NJ), LLC v. 925ly.com, Case No. 2:11-cv-00590-LDG-CWH (D. Nev. May 11, 2011), and on behalf Chanel, Inc. in another matter, Chanel, Inc. v Does 1-172, Case No. 2:10-cv-02684-BBD-dkv (W.D. Tenn. November 1, 2010).

## IV.    CONCLUSION

In view of the foregoing, Plaintiff respectfully requests this Court enter an *ex parte* temporary restraining order as to the Defendants in the form submitted herewith and set a hearing regarding Chanel's preliminary injunction before the expiration of the temporary restraining order.

Dated: June *10*, 2013          KELLER, SLOAN, ROMAN & HOLLAND LLP

By: _____
ANNE E. KEARNS
Attorneys for Plaintiff, Chanel, Inc.

24

## SCHEDULE "A"
## DEFENDANTS BY NUMBER AND SUBJECT E-STORE NAMES

| Defendant Number | Defendant/Subject E-Store Name |
|---|---|
| 1 | helloglitz.storenvy.com |
| 2 | phonecandys.storenvy.com |
| 3 | storenvy.com/stores/27815-glam-bling |
| 4 | glamorme.storenvy.com |
| 5 | storenvy.com/stores/46854-the-pretty-little-geek |
| 6 | lccboutique.storenvy.com |
| 7 | rainbowsmile.storenvy.com |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## SCHEDULE "B"

## SUBJECT DOMAIN NAMES

| Defendant Number | Defendant/Subject Domain Name |
|---|---|
| 3 | glambling.us |
| 5 | theprettylittlegeek.com |

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION
FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER
RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION